U.S. DISTRICT COURT
WESTERN DISTRICT of LOUISIANA
RECEIVED - ALEXANDRIA

APR 0 3 2007

ROBERT H. SHEMWELL, CLERK
BY _____
           DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

PATRICIA A. JONES,                CIVIL ACTION
        Appellant                 NO. CV06-0687

VERSUS

JO ANNE B. BARNHART, COMMISSIONER     JUDGE DEE D. DRELL
OF SOCIAL SECURITY,                   MAGISTRATE JUDGE JAMES D. KIRK
        Appellee

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Patricia A. Jones ("Jones") filed applications for disabled widow's benefits and supplemental security income benefits ("SSI") December 1, 2003, alleging a disability onset date of March 1, 2000 (Tr. pp. 53, 348).[1] Those applications were denied by the Social Security Administration ("SSA") (Tr. pp. 24, 352).

A de novo hearing was held before an administrative law judge ("ALJ") on April 12, 2005 (Tr. pp. 374-399), at which Jones appeared with an attorney, a witness, and a vocational expert ("VE"). The ALJ found that, although Jones has "severe" impairments of diabetes mellitus with mild peripheral neuropathy,

---

[1] This is the application the ALJ used in deciding Jones' claim. In another application for widow's insurance benefits filed on March 12, 2003, Jones' alleged a disability onset date of December 7, 2002 (Tr. p. 49). In her application for SSI, Jones stated she became impaired by diabetes on March 18, 1999 (Tr. p. 348).

hypertension, and arthritis, Jones has the residual functional capacity to perform the full range of light work and can perform her past relevant work as a fishing lure and tackle maker. Therefore, the ALJ concluded Jones was not under a disability as defined in the Social Security Act at any time through the date of his decision on July 7, 2005 (Tr. pp. 21-22).

Jones requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 4), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Jones next filed this request for judicial review of the Commissioner's final decision. Jones raises the following issues for review on appeal:

> 1. The ALJ erred at Steps 2 and 3 of the evaluation process in failing to properly consider all of Jones' medically-determined impairments. This, in turn resulted in a residual functional capacity assessment at Step 4 that was unsupported by the totality of the evidence, so the ALJ's finding that Jones could perform her past work as a fishing lure assembler was erroneous.
>
> 2. The testimony of the VE supports a finding that Jones was disabled.

The Commissioner filed a brief in response to Jones' appeal. Jones' appeal is now before the court for disposition.

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168

2

F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988);

Dellolio, 705 F.2d at 125.

## Eligibility for Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. § 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382(a)(3).

The Social Security Act establishes a three-pronged test for eligibility for disabled widow's benefits. To qualify for disabled widow's benefits, a claimant must establish that she is not married, is between 50 and 60 years old, and has a physical or mental impairment or impairments that, under the regulations promulgated by the Commissioner, are deemed to be so severe as to preclude her from engaging in any gainful activity. Also, the claimant must show her disability began no later than seven years after the wage earner's death or seven years after she was last entitled to survivor's benefits. 42 U.S.C. § 402(e); 20 C.F.R. § 404.335.

## Medical Records Summary

Jones was diagnosed with diabetes in about 1999, for which she

4

takes oral medication (Tr. p. 103). In January, 2000, Jones' noncompliance with taking her medications was noted (Tr. p. 332). In March 2000, Jones complained of pain in her hips; however, her exam was "completely normal" (Tr. p. 301) and an arterial doppler did not indicate any signs of peripheral vascular disease in her legs (Tr. p. 317). An EMG in March 2000 indicated right carpal tunnel syndrome, right ulnar neuropathy, and right bilateral S1 radiculopathy (Tr. pp. 309-310). In April 2000, Jones weighed 221 pounds and her diabetes was noted to be poorly controlled (Tr. p. 300). In November 2000, x-rays of Jones' lumbosacral spine were negative for fractures or dislocations, and an MRI was normal (Tr. pp. 258, 260).

In December 2001, a CT scan was taken of Jones' neck, due to complaints of neck pain. Jones' neck was normal, and her sinuses showed only minimal sinus inflammatory disease (Tr. pp. 215, 218). X-rays showed degenerative changes of the cervical spine without acute injury (Tr. p. 222). In December 2001, Jones was treated for hidradenitis with Keflex (Tr. p. 211).

In 2002, Jones weighed 220 pounds (Tr. p. 122). Jones received treatment for her diabetes at Huey P. Long Hospital; some loss of protective sensation was noted in her feet (Tr. pp. 108-124, 209). Jones was also diagnosed with arthritis due to pain and crepitation in her right shoulder and pain in her left knee, for which she was prescribed Celebrex, and hyperlipidemia,[2] for which

---

[2] Hyperlipidemia is the presence of excess fat or lipids in the blood. MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Hyperlipidemia, *available at*

she was prescribed Lipitor (Tr. pp. 118-119, 121, 123). After she complained of aching all over, she was also diagnosed with fibromyalgia, for which she was prescribed Trazodone and Flexeril (Tr. pp. 122); "trigger points" were noted in Jones' "shoulders, hips, legs." In April 2002, x-rays of Jones' shoulders showed mild degenerative changes within the AC joints without evidence of acute injury (Tr. p. 204). In July 2002, it was noted that Jones was not taking her medications (Tr. p. 200).

Jones was diagnosed with diabetic neuropathy and prescribed Napro and Talacen on May 5, 2003 (Tr. pp. 98-99).

Jones was examined in June 2003 by Dr. Jason Beasley (Tr. pp. 103).[3] She was 5'3" tall and weighed 192 pounds, ambulated with minimal difficulty, and was able to position herself both on and off the examining table without assistance (Tr. p. 104). Jones did not have any problems with her gait, extremities, fine motor skills, or ranges of motion (Tr. p. 105). Jones' straight leg raises were negative bilaterally (Tr. p. 105). Jones had mildly decreased sensation in her feet, but no ulceration (Tr. p. 105). Jones' chest x-rays showed poor inspiratory effort but did not reveal any evidence of acute pulmonary process or bony abnormalities (Tr. p. 105). Dr. Beasley diagnosed diabetes mellitus with some evidence of mild peripheral neuropathy (Tr. p.

---

http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

[3] Dr. Beasley's curriculum vitae is not included in the administrative record.

105), arthritis with some magnification of symptoms in her right elbow and right knee, shortness of breath, and decreased visual acuity (20/200 bilaterally) without glasses but greatly improved vision with her glasses (20/40 bilaterally) (Tr. pp. 105-106).

In January and February of 2004, Jones weighed 192 pounds. She was seen frequently by a nurse, who maintained Jones' prescriptions (Tr. pp. 125-137). In March 2004, after complaining of shortness of breath and chest pain, x-rays showed normal heart and lungs and no breathing problems (Tr. p. 164); it was noted Jones had been non-compliant with her sinus medication (Tr. p. 163). In May and August 2004, Jones weighed 216 pounds (Tr. pp. 154, 159). Jones's diabetes foot screen showed Jones had sensation in her feet (Tr. p. 160).

On January 31, 2005, Jones weighed 234 pounds, but claimed she had been compliant with her medications and diet (Tr. p. 152). On March 17, 2005, Jones was seen at Huey P. Long Medical Center; Jones' history of noncompliance with medications and failure to check her blood sugar regularly were noted, as well as her noncompliance with dietary instructions, and her weight gain to 239 pounds was noted (Tr. p. 140).

### Administrative Hearing

At her April 12, 2006, administrative hearing (Tr. pp. 374-399), Jones testified she was 52 years old, about 5'4" tall, weighed about 192 pounds, and lived with her oldest sister in an apartment (Tr. pp. 377-378). Jones finished the eleventh grade in regular classes, can read, write and do basic math, and has past

relevant work as an aide in a state school for the handicapped, caring for children in her home, in a hospital laundry (Tr. pp. 378-380), and making fishing lures for Bill Lewis Lures (Tr. p. 57). Jones testified that she did not have any income, but her sister worked (Tr. p. 378). Jones testified that, because of problems with her hands and arms, she has not driven since her husband died in 2003 (Tr. p. 378). Jones usually takes a bus to her medical appointments, but has difficulty climbing into the bus (Tr. p. 384). Jones testified she cannot walk two blocks due to her arthritis, but the bus stop is only about "ten steps" from her sister's apartment (Tr. p. 387).

Jones also testified she cannot work because she has problems breathing, problems with her legs and arms, and problems staying mentally focused; she receives treatment for these problems at Huey P. Long Hospital every three to six months (Tr. pp. 381, 387, 388). Jones testified she takes fluid tablets for the problems with her legs, but that they remain swollen (Tr. p. 381). Jones has more problems with her right leg than her left leg, and testified her right leg sometimes "goes out" and she falls (Tr. p. 389). Jones testified her arms and hands stay swollen due to arthritis and she is supposed to wear braces on her arms at all times, but admitted she takes them off sometimes; Jones does not take arthritis medication but she used to (Tr. p. 381). Jones also admitted she only does her hand exercises "now and then"; Jones testified she has a very tight grip (Tr. p. 382). Jones also testified she has more trouble with her right hand then her left, and is right-handed

8

(Tr. p. 390). Jones' fingers get stiff and "lock" on her (Tr. p. 390). Jones takes insulin daily for her diabetes and tries to adhere to her special diet (Tr. p. 384). Jones said her health problems began before her husband died (Tr. p. 382). Jones testified she has had difficulty breathing for about three years, and has to use an inhaler about three times a day (Tr. p. 388).

Jones testified that she usually spends her days sitting and "being depressed" because she cannot afford all of her medications, but stated she does not go to a mental health clinic (Tr. p. 383). Jones said when she is depressed, she is very nervous and loses her appetite (Tr. p. 383). Jones testified she spends a lot of time reading her Bible, but does not have any hobbies. Jones testified she is a minister and counsels one or two people a week in her home for thirty minutes to an hour, or prays with them, and does not receive any money for her services (Tr. pp. 385-386). Jones also testified that her sister does all the housework (Tr. p. 388), but she does a little cooking and a little washing (Tr. p. 390). Jones has difficulty walking, and has to get up after sitting for "a period of time" because she becomes very stiff in her arms, legs, and back (Tr. pp. 389-390).

Jones' sister, Eliza Mock, testified that Jones has lived with her for about two years, and stated that Jones' breathing problems and her problems with her arms and legs have gotten worse; Jones has trouble using her arms, the tingling and aching in her hands goes up into her arms, and some days she can hardly walk (Tr. pp. 391, 394). Jones tries to help with the grocery shopping, but she

9

cannot carry even a light bag because it causes her hand to "be in a fixation" (Tr. p. 392). Mock testified that Jones tries to do exercises for her hands and tries to do her own laundry (Tr. p. 392). Mock also testified that Jones tries to walk, and can to so for about ten feet, then has to stop due to her legs (Tr. p. 392). Mock confirmed that Jones reads during the day, talks to people on the phone, and ministers to about two people per week (Tr. p. 393). Mock testified that Jones' diabetes is out of control, although she "pretty much" tries to watch her diet (Tr. p. 393-394); Mock has tested Jones' blood sugar and often found it above 200 and sometimes above 300 (Tr. p. 393). Mock testified she works in a home for the elderly (Tr. p. 391).

A vocational expert ("VE") testified that Jones' past work caring for children in her home was light, semi-skilled work (Tr. p. 396). The ALJ asked the VE whether someone of Jones age, education, and work experience, who could lift and carry 20 pounds occasionally and ten pounds frequently, stand and walk about six hours in an eight hour day, sit for six hours, could not be exposed to pulmonary irritants, and could not do complex work, would be able to do their past relevant work (Tr. p. 396). The VE testified that such a person would be able to do her past relevant work as a child care worker (1000 jobs in Louisiana, 57,000 in the nation) (Tr. p. 396), or she could be an egg-washer machine operator (light work, 1200 jobs in Louisiana and 99,000 in the nation), a poultry dresser (light work, 287 jobs in Louisiana and 18,000 in the nation), or a ticket taker (light work, 35,000 jobs in the nation,

385 in Louisiana). Finally, the VE testified that, if the person could only walk ten feet and could only stand for a very brief time, she could not do any of those jobs (Tr. p. 398).

### Findings and Conclusions

After review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), I find that there is substantial evidence in the record as a whole to support the Commissioner's decision of non-disability and the Commissioner's decision comports with all relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of Fed.R.Civ.P. rule 52, I note that the Commissioner's findings and conclusions[4] put at issue by appellant are supported by substantial evidence, which can be outlined as follows.

### Issue 1 - Residual Functional Capacity

Jones contends the ALJ correctly found she suffers from "severe" diabetes mellitus, peripheral neuropathy, hypertension, and arthritis, but erred in failing to find she also suffers from fibromyalgia, recurrent hidradenitis suppurativa,[5] degenerative changes in her cervical spine, degenerative changes bilaterally in

---

[4] The relevant findings and conclusions are located in the administrative record at Transcript pages 15-22.

[5] Recurrent hidradenitis suppurativa is a chronic suppurative inflammatory disease of the apocrine sweat glands. MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: hidradenitis suppurativa, *available at* http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

11

her shoulders, carpal tunnel syndrome, right ulnar neuropathy, and bilateral S2 radiculopathy, and also ignored her inability to reach, handle and finger in finding she could work. Thus, Jones argues the ALJ erred at Steps 2 and 3 of the evaluation process in failing to properly consider all of Jones' medically-determined impairments. Jones contends this resulted in a residual functional capacity assessment at Step 4 that was unsupported by the totality of the evidence, so the ALJ's finding that Jones could perform her past work as a fishing lure assembler was erroneous.

The medical evidence does not support Jones' contention that she suffers from recurrent hidradenitis suppurativa. One diagnosis and treatment for hidradenitis was noted in 2001 (Tr. p. 211), and Jones has not pointed specifically to any other medical records in her brief. Nor is there sufficient medical evidence in the record which supports the brief, conclusory diagnosis of fibromyalgia. The criteria set forth by the American College of Rheumatology "1990 Criteria for the Classification of Fibromyalgia" at www.rheumatology.org/publications/classification/fibromyalgia, and Stedman's Medical Dictionary, 27th ed.:

> "Fibromyalgia is a complex rheumatic condition with no known cause or cure. The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites."

Jones' doctor only noted "trigger points" in Jones' "shoulder, hips, legs" (Tr. p. 122). There does not appear to be any other diagnoses of fibromyalgia in the administrative record, and no

doctor noted at least eleven of eighteen tender points.

Also, the degenerative changes in Jones' shoulders and spine are only mild. Although Jones was once diagnosed with carpal tunnel syndrome, right ulnar neuropathy, and S1 radiculapthy from the results of an EMG, there are no further diagnoses or treatments in the record regarding those complaints. Moreover, although Jones was diagnosed in 2002 with "corneal degeneration," her eyesight was 20/40 and 20/50 with glasses and she was only told to return to the clinic in one year (Tr. p. 205). Jones also argues that, in the future, she may have end-organ damage from her diabetes; if and when that occurs, Jones may file a new claim for benefits.[6]

Jones' claim that she is unable to work lacks support in the objective medical evidence. Although Jones' hearing was in 2006, her last comprehensive evaluation was in 2003, and it did not support her claims of physical limitations (Tr. pp. 103-106). No doctor ever placed limitations on her ability to work or her daily activities, and no doctor ever stated she cannot reach, handle or finger things. Jones' medical evidence spans many years and reflects frequent noncompliance with medications and dietary instructions. If a claimant does not follow the prescribed treatment without a good reason, she will not be found disabled. 20 C.F.R. § 404.1530(b).

Finally, Jones contends the ALJ erred in not giving more

---

[6] The deterioration of claimant's conditions, which occurs after the date of the Commissioner's decisions, may form the basis of a new claim. <u>Johnson v. Heckler</u>, 767 F.2d 180, 183 (5th Cir. 1985).

doctor noted at least eleven of eighteen tender points.

Also, the degenerative changes in Jones' shoulders and spine are only mild. Although Jones was once diagnosed with carpal tunnel syndrome, right ulnar neuropathy, and S1 radiculapthy from the results of an EMG, there are no further diagnoses or treatments in the record regarding those complaints. Moreover, although Jones was diagnosed in 2002 with "corneal degeneration," her eyesight was 20/40 and 20/50 with glasses and she was only told to return to the clinic in one year (Tr. p. 205). Jones also argues that, in the future, she may have end-organ damage from her diabetes; if and when that occurs, Jones may file a new claim for benefits.[6]

Jones' claim that she is unable to work lacks support in the objective medical evidence. Although Jones' hearing was in 2006, her last comprehensive evaluation was in 2003, and it did not support her claims of physical limitations (Tr. pp. 103-106). No doctor ever placed limitations on her ability to work or her daily activities, and no doctor ever stated she cannot reach, handle or finger things. Jones' medical evidence spans many years and reflects frequent noncompliance with medications and dietary instructions. If a claimant does not follow the prescribed treatment without a good reason, she will not be found disabled. 20 C.F.R. § 404.1530(b).

Finally, Jones contends the ALJ erred in not giving more

---

[6] The deterioration of claimant's conditions, which occurs after the date of the Commissioner's decisions, may form the basis of a new claim. <u>Johnson v. Heckler</u>, 767 F.2d 180, 183 (5th Cir. 1985).

weight to her complaints of pain. Although a claimant's assertion of pain or other symptoms must be considered by the ALJ, 42 U.S.C. § 423(d)(5)(A) requires that a claimant produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged. The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence. Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989), citing Owens v. Heckler, 770 F.2d 1276, 1281 (5th Cir. 1985). The mere existence of pain is not an automatic ground for obtaining disability benefits. The factual determination of whether the claimant is able to work despite some pain is within the discretion of the Administrative Law Judge and will be upheld if supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).

A claimant's symptoms, including pain, will be determined to diminish a claimant's capacity for basic work activities to the extent that the claimant's alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §404.1529(c)(4). Subjective complaints of pain must be corroborated by objective medical evidence. Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2000). Although severe pain can constitute a nonexertional impairment, pain is a disabling condition only when it is constant, unremitting and wholly unresponsive to therapeutic treatment. Chambliss, 269 F.3d at 522.

14

While pain can be severe enough to create a disabling condition, the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. Elzy v. Railroad Retirement Bd., 782 F.2d 1223, 1225 (5th Cir. 1986); Loya v. Heckler, 707 F.2d 211, 215 (5th Cir. 1983). The ALJ's decision on the severity of pain is entitled to considerable judicial deference. James v. Bowen, 793 F.2d 702, 706 (5th Cir. 1986); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987). Such a credibility determination is within the province of the ALJ. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Wren v. Sullivan, 925 F.2d 123, 128-29 (5th Cir. 1991). Hence, the law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints and articulate his reasons for rejecting any subjective complaints. Falco v. Shalala, 27 F.3d 162, 163-64 (5th Cir. 1994).

The ALJ made findings as to Jones' pain and credibility, noting Jones had not been compliant with her diabetes medication and diet, had not sought treatment for her complaints of depression, and had not sought any assistance to help her purchase her medications, the medical evidence did not support her claim that her legs swell every day, and Dr. Beasley had noted Jones magnified her right elbow symptoms (Tr. pp. 20-21). The ALJ concluded that Jones has some limitations in her ability to perform work functions, but her subjective complaints were credible only to the extent they were consistent with the objective medical evidence

15

(Tr. p. 21).

Since the ALJ in this case made the mandatory indication of the basis for his credibility choices concerning claimant's complaints, and since his choices are not unreasonable, his finding that Jones' pain would not prevent Jones from performing work is proper. <u>Carry v. Heckler</u>, 750 F.2d 479, 485-86 (5th Cir. 1985). Substantial evidence supports the Commissioner's conclusion that Jones is not disabled by pain.

Finally, Jones contends in her brief that there is nothing in the record indicating she used to work as a fishing lure maker. However, the work history in her benefits application indicates she did that type of work longer than any other job, from 1998 through 1999 (Tr. p. 57).[7]

Therefore, this ground for relief is meritless.

## Issue 2 - VE's Testimony

Jones also contends the VE's testimony supports a finding that she is disabled, arguing primarily that the ALJ failed to ask the VE any questions about working as a fishing lure maker. While it is true the ALJ overlooked Jones' prior relevant work as a fishing lure maker when questioning the VE, that circumstance is irrelevant in light of the ALJ's findings.

To determine disability, the ALJ applied the sequential

---

[7] In her description of her job as a fishing lure maker, Jones stated she worked eight hours a day, five days a week, used machines, tools or equipment, walked about 30 minutes a day, stood up about 15 minutes a day, sat about 5 hours a day, handled, grabbed or grasped big objects all day, and never lifted more than ten pounds (Tr. p. 57).

process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Jones (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Jones has not engaged in substantial gainful activity since 2003 and she has severe impairments of diabetes mellitus with mild peripheral neuropathy, hypertension and arthritis, but that she does not have an impairment or combination of impairments listed in or medically

17

equal to one listed in Appendix 1 (Tr. p. 20). The ALJ then found that Jones was still able to perform her past relevant work as a fishing lure maker (Tr. p. 22). The sequential analysis thus ended at Step 4, with a finding that Jones was not disabled.

Since the sequential analysis ended at Step 4, it was not necessary for the ALJ to proceed to Step 5 and consult a VE about other kinds of work Jones could perform. Therefore, the issue of whether the ALJ's hypothetical question to the VE was incomplete is moot. This ground for relief is also meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and that Jones' appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM**

ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 3rd day of April, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE